**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ROBERT FOX, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. _____ |
| | ) | |
| WINSTON INTERNATIONAL | ) | |
| DEVELOPMENTS, LLC, and | ) | |
| PARIS WINSTON, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |
| | ) | |
| _____ | ) | |

# COMPLAINT

## INTRODUCTION

1.      Plaintiff Robert Fox ("Fox") fell victim to the fraudulent statements of Defendants Winston International Developments, LLC ("WID") and Paris Winston, a/k/a Eli Paris Winston, a/k/a Zackary Paris Silver ("Winston"), in hopes of inducing Fox to provide money for a nonexistent business opportunity promised by Defendants, ultimately causing him to provide Defendants with $250,000 that they refuse to return.

2.      Defendants claimed that they planned to pursue a large-scale agricultural project to grow certain types of African grains in the United States and Canada.

3.      Defendants had no such plans.

4.      Rather, they made these statements to induce Fox to provide them money that was simply pocketed by Defendants.

5.      Defendants' plan worked.

6.      Fox provided Defendant WID with a check for $250,000 on January 16, 2025.

7.     After Fox provided that $250,000, he became suspicious of Defendants' claims.

8.     Fox then hired a private investigator to look into Winston's background.

9.     Fox then learned for the first time that Defendants told him a series of falsehoods to gain his confidence.

10.     For example, Winston told Fox that he was a billionaire.

11.     But no publicly-available lists of billionaires include Winston on them.

12.     Beyond that, Winston appears to have very little online presence aside from a nearly decade-old 'Huffington Post' article discussing him.

13.     Additionally, Winston told Fox that he or his company/ies had recently sold a separate agricultural venture to Saudi Arabian investors for $100 million in cash.

14.     But the land that was part of that earlier venture was not sold to Saudi Arabian investors. It was sold to local Canadian residents at a per-acre price amounting to a fraction of the claimed $100 million.

15.     And it turns out that Winston has gone by various names over the years, including "Eli Paris Winston" and "Zackary Paris Silver."

16.     Indeed, Winston, who is approximately 70 years old, only received his social security number in 1988.

17.     All of this and more made Fox realize that he had been tricked into giving Defendants $250,000 for a nonexistent business venture.

18.     Fox has since demanded the return of his $250,000.

19.     Defendants have refused to return the $250,000 to him.

## THE PARTIES

20.     Plaintiff Robert Fox is an Illinois citizen, residing in Chicago, Illinois.

21.     Defendant Winston International Developments, LLC ("WID") is a Connecticut limited liability company, with its principal place of business in Connecticut.

22.     WID's two members, Paris Winston and Maryam Saeri, are citizens and residents of Connecticut, residing in Huntington, Connecticut.

23.     Defendant Winston is a citizen and resident of Connecticut, residing in Huntington, Connecticut.

## JURISDICTION AND VENUE

24.     This Court possesses original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

25.     Fox is an Illinois citizen residing in Chicago, Illinois.

26.     The two member of WID are citizens and residents of Connecticut.

27.     And Defendant Winston is a citizen and resident of Connecticut.

28.     Thus, complete diversity exists among the parties.

29.     The amount of money that Fox provided to Defendants totals $250,000.

30.     Additionally, the fraud-based claims raised in the Complaint may give rise to the recovery of punitive damages, which may total another $250,000 or more.

31.     In short, Fox's damages claims exceed $75,000, meeting the jurisdictional threshold required by Section 1332.

32.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Fox's claims occurred in this District.

33.     For example, the parties discussed a business proposition in this District, particularly in downtown Chicago, Illinois.

34.     Winston made in-person fraudulent statements to Fox in Chicago, Illinois.

35.     Winston made phone calls and sent texts to Fox regarding the business proposition, which Fox received in Chicago, Illinois.

36.     And Fox provided the $250,000 check to Defendants in Chicago, Illinois.

### STATEMENT OF FACTS

37.     Fox operates a trucking company based in the Chicagoland area.

38.     Defendant Winston first met Fox in downtown Illinois on or about September 30, 2024.

39.     Winston and Fox first met in the lobby of Fox's residential building near East Erie Street and North Michigan Avenue in downtown Chicago.

40.     After engaging in some conversation during that first meeting, Winston learned that Fox had substantial funds that he could invest in business ventures.

41.     At that point, Winston believed he had possibly found a mark.

42.     On December 7, 2024, Winston sent Fox an article in 'The Huffington Post' from 2017.

43.     That article touted Winston's supposed business acumen.

44.     Winston sent Fox that article to give Fox further confidence in Winston's business skills generally.

45.     On December 21, 2024, Winston and Fox had another conversation in the lobby of Fox's residence where Winston told Fox about Defendants' intent to create a business venture related to growing, harvesting and commercializing grains known as Teff and Fonio as edible consumer products.

46.     That December 21, 2024 conversation also occurred in the lobby of Fox's residence in downtown Chicago.

47.     In that December 21, 2024 conversation and a follow-up conversation on January 12, 2025, Winston told Fox a series of falsehoods about the intent to create a business venture involving these grains.

48.     Winston told Fox these falsehoods on his own behalf and on WID's behalf.

49.     These falsehoods included that Defendants had recently sold a separate grain venture for $100 million to Saudi Arabian purchasers, stating *via* text, "I've sold my grain company for a very substantial profit to the Saudi's [sic] and I'm eager to jump right back in."

50.     Fox later learned through the real estate agent who handled the purchase of that land that it was not sold to Saudi Arabian investors but to local Manitoba residents and sold at a price far below what Defendants were claiming.

51.     Winston told Fox that he was a successful businessman and indeed a billionaire.

52.     Winston told Fox that Winston's name is in fact "Paris Winston" even though Winston has gone by several names or aliases over the years, including "Eli Paris Winston" and "Zackary Paris Silver." It is unclear if any of these names is the true name of the second-named Defendant.

53.     Defendants designed these statements to gain Fox's confidence and to cause Fox to provide $250,000 in funds for Defendants' supposed next business venture.

54.     Winston's and WID's efforts worked, and on January 16, 2025, Fox provided a check for $250,000 to WID.

55.     Even after Fox provided $250,000 to WID, Defendants pressed Fox for an additional $250,000 for the supposed venture.

56. Yet, once Fox provided the initial $250,000 to WID, he became concerned that the business venture was not real.

57. Multiple pieces of new information led him to believe that he had provided the initial $250,000 as part of a ruse or confidence scheme.

58. For example, Winston used a false sense of urgency in pressing Fox for the $250,000 payment, texting Fox messages such as, "Can you do [payment within] sixty days?" even though Fox indicated that any such payment would need to be made on a longer timeframe.

59. Winston further told Fox that while his initial proposal of the business venture would have required Fox to provide $1 million in seed money, when Fox told him that he was unwilling to provide $1 million, Winston said that if Fox were willing to provide $500,000 instead, Defendants would still give Fox fifty percent of the common interest in the venture even though Winston had initially discussed a 50% share based on a $1 million investment.

60. Winston further told Fox that Defendants had recently sold another grain venture for $100 million and wanted to jump "right back in," stating a "need to buy land in the US." Of course, if Defendants had recently sold a large venture for $100 million in cash, they didn't need Fox's $250,000 (or another $250,000) urgently to fund their supposed new venture.

61. Winston further told Fox that Winston was meeting with various individuals who could help with the supposed new venture, but Winston failed to provide Fox with the names of most of these individuals, cryptically referring to them as, for example, "the President of an advertising firm who specializes in organic foods, and I have a special relationship with [him]. He's the top guy in the field."

62.     Winston forwarded Fox texts from individuals who Winston claimed were helping with the supposed new business venture but only copied the verbiage of the text without forwarding the information showing who had actually sent the text.

63.     And when Fox told Defendants that Fox would not be providing another $250,000, Winston amped up the pressure even more, threatening Fox with a lawsuit and accusing Fox of being "unscrupulous," all in an attempt to scare Fox into providing yet more money.

64.     Ultimately, by March 2, 2025, Fox became increasingly concerned that he had been duped when Winston's wife told Fox that a lunch meeting Winston was having that day was not with the CEO of Cresco Labs, as Winston had claimed, but was with a family friend.

65.     On March 13, 2025, after Fox asked to see proof from Winston of $25 million that Defendants had supposedly put up for the venture that he claimed to have sold to Saudi investors for $100 million, Winston rebuffed that request and told Fox that he was getting a new "partner" for the supposed venture involving Teff and Fonio.

66.     On March 18, 2025, Fox demanded that Defendants return the $250,000 to him.

67.     To date, neither Defendant has returned the $250,000 to Fox.

## COUNT I – FRAUD
### (Plaintiff as to Defendants)

68.     Fox restates and reasserts his allegations in Paragraphs 1-66 above as if fully stated herein.

69.     Defendants made false statements of material fact to Fox. Namely, they told Fox that they intended to create a business venture related to growing, harvesting and commercializing grains known as Teff and Fonio as edible consumer products. But no such business venture existed and Defendants had no intent to create such a business. Instead, they

invented this business venture as a way to get Fox to provide them money as a supposed investment in this nonexistent venture.

70.     Defendants knew the statements that they made about their intent to create this business venture were false, and they knew that no such venture existed.

71.     In making their false statements about the nonexistent venture and their intent to create it, Defendants intended that Fox rely on those false statements and take action in relation to those false statements.

72.     Fox justifiably relied on Defendants' false statements about the business venture and Defendants' intent to create it and provided $250,000 in reliance of those false statements. Fox further relied on Winston's false statements about Winston's supposed past business success, his wealth and his business contacts, among other things, in providing the $250,000. Indeed, Fox would not have provided the $250,000 had he known the truth about the supposed venture.

73.     Fox's reliance on Defendants' false statements caused him to suffer financial injury in the amount of $250,000 in funds provided to Defendants.

74.     Fox alleges Defendants' fraud with specificity, identifying (A) who made and who received the fraudulent statements (*i.e.*, Paris Winston made the fraudulent statements on his and WID's behalf and Fox received them); (B) what the fraudulent statements were (*i.e.*, that Defendants intended to create a business venture related to growing, harvesting and commercializing grains known as Teff and Fonio as edible consumer products, but no such business venture existed and Defendants had no intent to create such a business); (C) when the fraudulent statements occurred when the fraudulent statements occurred (*i.e.*, beginning on or about September 30, 2024 and continuing through December 21, 2024 and into January 2025,

including on January 12, 2025, and into February and March 2025; (D) where the fraudulent

statements occurred (*i.e.*, at Fox's building in downtown Chicago and *via* various phone calls,

emails and texts between Winston and Fox); and (E) how the fraudulent statements occurred

(*i.e.*, they were presented to Fox by Winston in person, over the phone and in emails and texts).

75.     As a result, Defendants have been fully put on notice of the fraud claims against

them.

76.     Fox's damages are valued in excess of $75,000.00.

**WHEREFORE**, Plaintiff Robert Fox prays that this Court enter a judgment in his favor

and against Defendants Winston International Developments, LLC and Paris Winston and award

him the following relief:

      A.     Compensatory damages of $250,000 to Fox;

      B.     Any other compensatory damages deemed just and proper under the circumstances;

      C.     Punitive damages in the maximum amount allowed under law;

      D.     Fox's costs incurred in bringing this action, including but not limited to litigation costs, expert fees and reasonable attorneys' fees;

      E.     Prejudgment interest in the maximum amount allowed under law; and

      F.     Any other relief as the Court deems just and proper under the circumstances.

### COUNT II – VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*
**(Plaintiff as to Defendants)**

77.     The foregoing Paragraphs 1 through 76 are incorporated by reference as if fully

set forth herein.

78.     Defendants committed a fraudulent and deceptive act in the course of commerce.

79.     Specifically, Defendants made false statements to Fox that they intended to create a business venture related to growing, harvesting and commercializing grains known as Teff and Fonio as edible consumer products. But no such business venture existed and Defendants had no intent to create such a business. Instead, they invented this supposed business venture as a way to get Fox to provide them money as an investment in a nonexistent venture.

80.     Defendants intended that Fox would rely on Defendants' representations as to the supposed business venture so that Fox would provide money that he believed was going toward the funding of this venture.

81.     Defendants' false statements to Fox occurred in the course of trade or commerce, namely the attempt to raise money for a venture related to growing, harvesting and commercializing certain grains.

82.     Fox indeed relied on Defendants' false statements and deceptive acts and would not have provided the $250,000 had he known that the business venture was not real and that Defendants' statements about it were false.

83.     As a direct and proximate result of Defendants' false statements, Fox provided $250,000 to Defendants.

84.     Fox alleges Defendants' violation of the Illinois Consumer Fraud and Deceptive Business Practices Act with specificity, identifying (A) who made and who received the fraudulent statements (*i.e.*, Paris Winston made the fraudulent statements on his and WID's behalf and Fox received them); (B) what the fraudulent statements were (*i.e.*, that Defendants intended to create a business venture related to growing, harvesting and commercializing grains known as Teff and Fonio as edible consumer products, but no such business venture existed and Defendants had no intent to create such a business); (C) when the fraudulent statements occurred

10

when the fraudulent statements occurred (*i.e.*, beginning on or about September 30, 2024 and continuing through December 21, 2024 and into January 2025, including on January 12, 2025, and into February and March 2025; (D) where the fraudulent statements occurred (*i.e.*, at Fox's building in downtown Chicago and via various phone calls, emails and texts between Winston and Fox); and (E) how the fraudulent statements occurred (*i.e.*, they were presented to Fox by Winston in person, over the phone and in emails and texts). As a result, Defendants have been fully put on notice of the fraud claims against them.

85.     Fox's damages are valued in excess of $75,000.00.

**WHEREFORE**, Plaintiff Robert Fox prays that this Court enter a judgment in his favor and against Defendants Winston International Developments, LLC and Paris Winston and award him the following relief:

A.      Compensatory damages of $250,000 to Fox;

B.      Any other compensatory damages deemed just and proper under the circumstances;

C.      Punitive damages in the maximum amount allowed under law;

D.      Fox's costs incurred in bringing this action, including but not limited to litigation costs, expert fees and reasonable attorneys' fees;

E.      Prejudgment interest in the maximum amount allowed under law; and

F.      Any other relief as the Court deems just and proper under the circumstances.

## COUNT III – UNJUST ENRICHMENT
### (Plaintiff as to Defendants)

86.     Fox restates and reasserts his allegations in Paragraphs 1-75 above as if fully stated herein.

87.     Defendants unjustly retained a benefit to Fox's detriment.

88.     Namely, Defendants received $250,000 belonging to Fox based on the statement that those funds would be used toward a business venture involving the growing, harvesting and commercialization of grains known as Teff and Fonio as edible consumer products, but no such venture existed.

89.     As a result, Defendants retained the $250,000 to Fox's detriment.

90.     Defendants' retention of the $250,000 violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Plaintiff Robert Fox prays for judgment in his favor and damages against Defendants Winston International Developments, LLC and Paris Winston in the following ways:

A.      Compensatory damages of $250,000;

B.      Fox's costs incurred in bringing this action, including but not limited to litigation costs, expert fees and reasonable attorneys' fees;

C.      Prejudgment interest in the maximum amount allowed under law; and

D.      Any additional relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury in this action of all issues so triable.


Dated: May 9, 2025                              ROBERT FOX, Plaintiff

                                    By:     /s/ Michael R. Lieber
                                            One of Plaintiff's Attorneys

                                            Michael R. Lieber
                                            LIEBER LAW GROUP, LLC
                                            150 South Wacker Drive
                                            Suite 2400
                                            Chicago, Illinois 60606
                                            Tel:    (773) 354-6453
                                            Email: mlieber@lieberllc.com